UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JAMES BENSON WHITAKER, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) Civil Action No. 22-cv-01414 (CKK) |
|  | ) |
| UNITED STATES, | ) |
|  | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Plaintiff James Benson Whitaker, proceeding *pro se*, sues the United States for damages and equitable relief under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2672. *See* Compl. ECF No. 1, at 4, 6.[1] Currently before the Court is Defendant's Motion to Dismiss, or alternatively, for Summary Judgment, ECF No. 14, including its Memorandum in Support ("Def. Mem."), ECF No. 14-4. In response, Plaintiff filed an Opposition ("Pl. Opp'n"), ECF No. 16, to which Defendant filed a Reply ("Def. Reply"), ECF No. 17. For the reasons discussed below, the Motion to Dismiss will be granted and this case will be dismissed without prejudice pursuant to Federal Rule 12(b)(1).

**I.    BACKGROUND**

---

[1]   The Court relies on the ECF-generated page numbers in citing to Plaintiff's Complaint.

1

Plaintiff is a former Foreign Service Officer for United States Agency for International Development ("USAID"). *See* Compl. at 7. During his first overseas tour in 2010, Plaintiff received a massage while on temporary duty assignment in Tajikistan. *Id*. He asserts that, during the massage, he became the victim of a sexual assault. *See id*. More specifically, he alleges that the masseuse touched him inappropriately and propositioned him, upon which he immediately "ended the massage, declining the offer." *Id.*

Approximately a decade later, on June 12, 2020, Plaintiff was undergoing "security clearance review" through USAID's Office of Security, and during an interview with USAID official, Daniel Dorminey, he disclosed the massage incident in Tajikistan. *Id*.; *see* Pl. Opp'n Ex. A (Pl.'s Security Investigation Stmt., dated 6/18/22), ECF No. 16-1, at 3–4. He also disclosed previous struggles with gambling and resulting debts. *See* Pl. Opp'n Ex. A at 2–3. Plaintiff indicates that Dorminey submitted his investigation report on July 7, 2020. *See* Compl. at 8.

On July 14, 2020, Plaintiff received a Notice of Security Clearance Suspension from the Office of Security, stating that "[d]uring the investigation, additional potentially disqualifying information was developed, which is a security concern[,]" more specifically, Plaintiff's "delinquent debt and gambling." *Id.* at 8. According to Plaintiff, "[t]here was no mention of sexual misconduct in the Notice of Security Clearance Suspension or that sexual misconduct would be investigated." *Id*. Plaintiff was placed on paid administrative leave, pending the outcome of the Office of Security's investigation into his gambling and debt. *See id.* at 7; Pl. Opp'n Ex. B, ECF No. 16-2, (Notice of Administrative Leave, dated 7/14/20).

On August 7, 2020, and "[s]eparate from the security investigation [into his debt and gambling]," Nicholas Gottlieb, USAID's Director of Employee and Labor Relations, notified Plaintiff by email that he "was being investigated for potential employee misconduct, specifically, that he paid for nudge massages." Compl. at 7; *see* Pl. Opp'n Ex. C (Notice and Response Emails, dated 8/7/20–8/8/20), ECF No. 16-3, at 2–3. Plaintiff responded to Gottlieb by email the following day, "denying that he had ever paid for sex acts and complain[ing] that if a woman experienced what [he] had . . . it would clearly be considered sexual assault." Compl. at 7; *see* Pl. Opp'n Ex. C at 1–2.

On September 3, 2020, Plaintiff received a Notice of Proposed Separation, executed by Bob Leavitt, USAID's Chief Human Capital Officer. Compl. at 7; *see* Pl. Opp'n Ex. D, ECF No. 16-4 (Notice of Separation, dated 9/3/20). It listed the massage incident in Tajikistan as support for the charge of "Conduct Unbecoming a Foreign Service Officer." *See id*. In addition, the Notice stated that Plaintiff did not have "the potential for rehabilitation" because he allegedly failed to acknowledge "responsibility or remorse for [his] actions" and instead "paint[ed] [himself] as the victim." *See id*.

Plaintiff alleges that these charges negatively impacted his mental health, and as a result, on September 21, 2020, his therapist recommended that he go to the emergency room for suicide prevention. *See* Compl. at 7–8. After, from September 25, 2020, to October 23, 2020, he received treatment for depression through a partial hospitalization program. During this time, and due to his depression, Plaintiff applied for (1) Social Security disability benefits and, (2) disability retirement benefits through the Foreign Service Pension System. *See id*. On October 16, 2020, he submitted a formal Response to his Notice of Proposed Separation, in which he described the

3

impact that the alleged sexual assault had on his mental health. *See id.* at 7–8; Pl.'s Opp'n Ex. F (Response to Notice of Proposed Separation, dated 10/16/20), ECF No. 16-6.

On December 1, 2020, the Office of Security apparently emailed Plaintiff with a report documenting the results of its investigation into the massage incident in Tajikistan but declining to classify the event as sexual assault. *See id.* at 8. The Office ultimately concluded that, even though Plaintiff "did not accept the offer for sexual services[,]" his receipt of nude massages nonetheless reflected "poorly on his judgment and reason." *See id.*

Later that same month, Plaintiff was notified by the Department of State's Office of Medical Services that he qualified for permanent disability retirement based on his chronic depression, and it was determined that his "disability is caused by disease, not due to vicious habits, intemperance, or willful conduct[.]" *See id.*; Pl.'s Opp'n Ex. G (State Dep't Disability Determination, dated 12/17/20), ECF No. 16-7, at 1.

Before filing this lawsuit, Plaintiff submitted a "Standard Form 95" to Deputy General Counsel at USAID, who acknowledged receipt of the tort claim on August 12, 2021. *See* Compl. at 9. Although Plaintiff apparently did not receive USAID's Final Decision, *see id.*, it was issued on February 3, 2022, denying Plaintiff's FTCA claim for substantially similar reasons to those raised in Defendant's pending dispositive Motion, *see* Def. Mem. at 3 n.1; Def. Mem. Ex. 2 (USAID Final Decision, dated 2/3/2022), ECF No. 14-3. Notably, Plaintiff never filed a workers' compensation claim with the Office of Workers' Compensation Programs ("OCWP"). *See* Def. Mem. Ex. 1, First Declaration from Penelope E. Schultz ("Schultz Decl. I"), ECF No. 14-2, ¶ 3.

Plaintiff then filed this lawsuit on May 6, 2022, alleging intentional infliction of emotional distress ("IIED"), contending that USAID had a duty to recognize that the massage incident in Tajikistan was a sexual assault, and to investigate it accordingly. *See* Compl. at 9. Plaintiff further alleges that Defendant "committed error and abuse in its investigation," by making reckless, outrageous, and defamatory statements about his conduct, judgment, and character, and engaged in victim-blaming, causing him to suffer from continued depression, and ultimately costing him his job. *See id.* at 4, 6, 9. He demands $3,463,481 in lost salary, expungement of his security and personnel files as to Leavitt's findings, and that USAID consult with experts from the Rape, Abuse & Incest National Network ("RAINN") to train its human resource and security personnel. *See id.* at 4.

## II. STANDARD OF REVIEW

### Motion to Dismiss for Lack of Subject Matter Jurisdiction[2]

"Article III of the Constitution prescribes that '[f]ederal courts are courts of limited subject-matter jurisdiction' and 'ha[ve] the power to decide only those cases over which Congress grants jurisdiction.'" *Bronner v. Duggan*, 962 F.3d 596, 602 (D.C. Cir. 2020) (alterations in original) (quoting *Al-Zahrani v. Rodriguez*, 669 F.3d 315, 317 (D.C. Cir. 2012)); *see Gunn v. Minton,* 568 U.S. 251, 256 (2013) (" 'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.' ") (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Federal courts have an obligation to ensure that they do not exceed the scope of their jurisdiction. *See Henderson v. Shinseki*, 562 U.S. 428, 434 (2011).

---

[2]   Defendant also moves to dismiss for failure to state a claim pursuant to Federal Rule 12(b)(1), *see* Def. Mem. at 1, 5–6, 10–14, and alternatively moves for summary judgment pursuant to Federal Rule 56, *see id.* at 1, 9, 6–7, 14. However, due to the resolution of this matter pursuant to Federal Rule 12(b)(1), the Court does not need, and cannot, reach these alternative arguments.

Absent subject-matter jurisdiction over a case, a court must dismiss it. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506–07 (2006) (citing *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004)); Fed. R. Civ. P. 12(h)(3).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of demonstrating a court's subject-matter jurisdiction over the claim at issue. *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015), *cert. denied*, 577 U.S. 1103 (2016); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 96–97 (2010); *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942). When considering a motion to dismiss under Rule 12(b)(1), a court must accept as true all uncontroverted material factual allegations contained in the complaint and "'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged' and upon such facts determine jurisdictional questions." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005); *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004)). A court need not accept inferences drawn by the plaintiff, however, if those inferences are unsupported by facts alleged in the complaint or amount merely to legal conclusions. *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

When reviewing a challenge pursuant to Rule 12(b)(1), a court may consider documents outside the pleadings to assure itself that it has jurisdiction. *See Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947); *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). By considering documents outside the pleadings when reviewing a motion to dismiss pursuant to Rule 12(b)(1), a court does not convert the motion into one for summary judgment; "the plain language of Rule 12(b) permits only a 12(b)(6) motion to be converted into a motion for summary judgment" when documents extraneous to the pleadings are considered by a court. *Haase*, 835 F.2d at 905.

### III.   DISCUSSION

Defendant argues, *see* Def. Mem. at 8–10, that the Court lacks subject matter jurisdiction over Plaintiff's FTCA claims because they are prohibited by the "exclusive-remedy provision" of the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. § 8101 *et seq.*, and the Court agrees.

To begin, "[i]t has long been established . . . that the United States, as sovereign, 'is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.' " *U.S. v. Testan*, 424 U.S. 392, 399 (1976) (quoting *U.S. v. Sherwood*, 312 U.S. 584, 586 (1941)). "Because '[s]overeign immunity is jurisdictional in nature,' a plaintiff's identification of a valid waiver is critical to establishing a federal court's subject-matter jurisdiction over FTCA claims." *Id.* (quoting *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) (other citation omitted)). Absent an explicit waiver "in a specific context, a federal court must dismiss claims against the United States." *Manning v. Esper*, No. 12-1802, 2019 WL 281278, at *7 (D.D.C. Jan. 22, 2019) (citing *Clark v. Wells Fargo Bank*, 585 F. App'x 817, 819-21 (3d Cir. Sept. 22, 2014)), *appeal dismissed*, No. 19-5078, 2019 WL 4745367 (D.C. Cir. June 25, 2019); *Meyer*, 510 U.S. at 475 (same). The FTCA waives the sovereign immunity of the United States for certain torts. *See Harbury v. Hayden*, 522 F.3d 413, 416 (D.C. Cir. 2008), *cert. denied*, 555 U.S. 881 (2008). "That limited waiver is nevertheless curtailed by certain statutory and common law regimes." *Manning*, 2019 WL 281278, at *7 (collecting cases). Here, the competing "statutory regime" at issue is the FECA, which presents clear jurisdictional limitations to invoking the FTCA. *See id.* at 17–19.

Under the FECA, any "civil officer or employee in any branch of the Government of the United States," 5 U.S.C. § 8101(1)(A), is entitled to compensation where the "disability or death of an employee result[s] from personal injury sustained while in the performance of his duty," *id.*

7

§ 8102(a), and the Secretary of Labor administers and decides all questions arising therefrom, *see id.* § 8145.  Consequently, when a federal employee makes an injury claim, he "must bring [his] claim to the Secretary of Labor in lieu of filing a claim in federal court." *Sullivan v. United States*, No. 05-1418, 2006 WL 8451987, at *3 (D.D.C. June 22, 2006). "The Secretary then determines whether the injury was sustained in the performance of the employee's duties and whether the employee is eligible for relief regardless of fault." *Id.* (citing 5 U.S.C. §§ 8102(a), 8124, 8146); *see Zellars v. United States*, No. 05-1670, 2006 WL 1050673, at *3 (D.D.C. Apr. 20, 2006) (citing 5 U.S.C. § 8145 and finding that "[t]he ultimate determination of th[ese] question[s], . . . like all questions arising under the FECA, is committed to the Secretary of Labor.").

An employee covered by the FECA is also bound by its exclusive-remedy provision:

> The liability of the United States or an instrumentality thereof under this subchapter or any extension thereof with respect to the injury or death of an employee is exclusive and instead of all other liability of the United States or the instrumentality to the employee, his legal representative, spouse, dependents, next of kin, and any other person otherwise entitled to recover damages from the United States or the instrumentality because of the injury or death in a direct judicial proceeding, in a civil action, or in admiralty, or by an administrative or judicial proceeding under a workmen's compensation statute or under a Federal tort liability statute[.]

5 U.S.C. § 8116(c). "By offering fixed compensation in lieu of litigation rights, FECA 'was designed to protect the Government from suits under statutes, such as the Federal Tort Claims Act, that had been enacted to waive the Government's sovereign immunity.' " *Manning*, 2019 WL 281278, at *17 (quoting *Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 193–94 (1983)). "It is well established that 'the United States' liability for work-related injuries under FECA is exclusive.' " *Id.* at *17 (quoting *U.S. v. Lorenzetti*, 467 U.S. 167, 169 (1984); citing 5 U.S.C. § 8116(c)).

8

"[W]here there is a substantial question of FECA coverage—indeed, unless it is certain that the FECA does not cover the type of claim at issue—the district court may not entertain the FTCA claim . . . [and] only the Secretary of Labor . . . may decide whether FECA applies." *Klugel v. United States*, No. 06-01886, 2009 WL 10692972, at *1 (D.D.C. Aug. 18, 2009) (quoting *Mathirampuzha v. Potter*, 548 F.3d 70, 81 (2d Cir. 2008)).  Only "[i]f the Secretary determines that the plaintiff's claim is fundamentally outside the scope of the FECA," can that plaintiff attempt to bring a claim in District court.  *See id*. (quoting *Mathirampuzha*, 548 F.3d at 81; citing *Daniels-Lumley v. United States*, 306 F.2d 769, 771 (D.C. Cir. 1962) ("unless plaintiff's injuries were clearly not compensable under the F.E.C.A . . . we believe that the Secretary of Labor must be given the primary opportunity to rule on the applicability of the Act to this case.")).

Here, such a substantial question exists, and it suggests that the FECA is indeed applicable to Plaintiff's claims.  Defendant has submitted two Declarations from Penelope E. Schultz, the Assistant Branch Chief for the Branch of Regulations and Procedures for OWCP at the Department of Labor, attesting that the Secretary of Labor has reviewed Plaintiff's claims in this matter and has determined that it is substantially likely that they are covered by the FECA.  *See* Schultz Decl. I ¶¶ 1–6; Def. Reply Ex. 1 (Second Declaration from Penelope E. Schultz) ("Schultz Decl. II"), ECF No. 17-1, ¶¶ 1–7.  Her attestations are supported by a detailed legal Memorandum, *see id.* at Attach. A ("Coverage Memo"), analyzing the "substantial likelihood of coverage for Mr. Whitaker's emotional condition under FECA[,]" *id*. at 3.  The Secretary has concluded that the FECA "routinely covers emotional conditions that relate to an individual's federal employment factors[,]" more specifically, Plaintiff's alleged emotional injury suffered as result of an alleged flawed USAID investigation into the incident in Tajikistan.  *See id.* at 2–3.

Despite these assurances, Plaintiff raises doubts that that the FECA applies to his claims. *See* Compl. at 6; Pl. Opp'n at 5–8.³ First, he contends that he cannot be considered an "employee" in the performance of his duties, *see* 5 U.S.C. § 8101(1)(A), because he was "on leave" when the "extreme and outrageous statements were recklessly and intentionally communicated by the Defendant[,]" *see* Pl. Opp'n at 5 (citing Pl. Opp'n Ex. B). But, at that time, Plaintiff had been temporarily placed on administrative leave with pay, and he was required to "remain available by telephone and email during [his] normal duty hours." *See* Pl. Opp'n Ex. B at 1. Moreover, Schultz, on behalf of the Secretary of Labor, specifically reviewed this issue, and determined that his administrative leave status does not alter the substantial likelihood that FECA coverage extends to his claims. *See* Schultz Decl. II ¶¶ 4–5. Schultz attests that Plaintiff's leave status is irrelevant because "[t]he statements that led to Plaintiff's injuries were made in relation to the USAID's investigation into [Plaintiff's] conduct, and as those statements suggest error or abuse in Plaintiff's personnel action, there is a substantial likelihood that [Plaintiff] would be considered in the performance of duty for purposes of FECA." *See id*. ¶ 5.

And even if Defendant was somehow mistaken in this regard, it is "of no moment because" the Secretary's position "settles the matter." *See Barnes v. United States*, 285 F. Supp. 3d 78, 81–82 (D.D.C. 2018) (deferring to the Secretary's decision to extend FECA coverage to the plaintiff's injuries sustained while she was on leave) (relying on *Spinelli v. Goss*, 446 F.3d 159, 161 (D.C. Cir. 2006)), *aff'd*, No. 18-5054, 2018 WL 5115528 (D.C. Cir. Sept. 19, 2018); *Manning*, 2019 WL 281278, at *18 (finding that the Secretary, and not the court, must determine whether the plaintiffs' "injuries occurred in the course of duty" for purposes of qualifying under the FECA); *Sullivan*, 2006 WL 8451987, at *3 (collecting cases and holding that "courts should not resolve the question

---

³       The Court relies on the ECF-generated page numbers in citing to Plaintiff's Opposition.

of whether a particular injury was sustained in the performance of an employee's duties, instead finding that such responsibility lies exclusively with the Secretary[.]").

Second, Plaintiff contends that he faces an uphill battle because his FECA eligibility is predicated on alleged emotional damages caused by error or abuse in an agency investigation, "a rarely granted exception." *See* Pl. Opp'n at 5. But, once again, the ultimate determination of "all questions arising under the FECA is committed to the Secretary of Labor[,]" *Zellars*, 2006 WL 1050673, at *3, and Plaintiff overlooks the fact that the Secretary has *already* reviewed all of the alleged circumstances and found that there is a substantial likelihood that the FECA applies, precisely *because of* this exception, *see* Schultz Decl. II ¶ 6; Coverage Memo at 2–3 (citing agency cases supporting FECA coverage where internal investigations allegedly caused an employee emotional harm, even when those investigations were unrelated to the employee's regular or specialty assigned duties, so long as the agency allegedly committed error or abuse).

Third, and similarly, Plaintiff is uncertain that his claims can meet the FECA's "burden of proof" because of their purported atypical nature–*i.e.*, premised on the emotional fallout of an agency investigation. *See* Pl. Opp'n at 7–8. Plaintiff, however, prematurely assumes the validity of Defendant's 12(b)(6) arguments, *see* Def. Mem. at 10–14, and he confuses the minimal pleading standards required to *raise* an IIED claim in federal court with the burden of *proving* that claim, the latter of which he has not yet been asked to do. Moreover, he conflates the burden of proof as required by this Court with the burden of proof applicable to FECA proceedings, which is not the same. *Compare Elhusseini v. Compass Grp. USA, Inc.*, 578 F. Supp. 2d 6, 15–16, 22–24 (D.D.C. 2008) (explaining a plaintiff's burden of proving an IIED claim), *with* 20 CFR §§ 10.115–10.121 (listing the requirements for evidence and burden of proof for an administrative FECA claim).

And, importantly, the potential merits of Plaintiff's claims, and whether those claims fall within FECA's scope, are determinations that are definitively outside of this Court's purview. *See Daniels-Lumley*, 306 F.2d at 771 n.3 (determining that "there is a serious question as to whether the plaintiff is outside the scope of [FECA], and a decision by the Secretary of Labor that her injuries were not covered . . . is a condition precedent to the continued prosecution of this suit"); *Spinelli*, 285 F. Supp. 3d at 161 (finding that, even where, and *particularly* where, a claim under the FECA is based on "unsettled law," or the plaintiff's right to receive compensation is equivocal, the court is without jurisdiction, and the Secretary alone must render an opinion); *Barnes*, 285 F. Supp. 3d at 82 (same); *Kalil v. Johanns*, 407 F. Supp. 2d 94, 100 (D.D.C. 2005) (same); *see also Manning*, 2019 WL 281278, at *18 (holding that "this Court need not, and should not, decide whether . . . federal civilian Plaintiffs are entitled to recover under FECA."); *Scott v. USPS*, No. 05-0002, 2006 WL 2787832, at *4 (D.D.C. Sept. 26, 2006) (finding that "the sole responsibility for deciding whether FECA applies lies with the Secretary of Labor[.]") (citing *Southwest Marine, Inc. v. Gizoni*, 502 U.S. 81, 90 (1991)), *aff'd*, 258 Fed. Appx. 333 (D.C. Cir. 2007).

Put differently, "[w]hen there is ambiguity regarding whatever claims are covered by the FECA, the Secretary of Labor must determine if it applies." *Zellars v. United States*, 578 F. Supp. 2d 1, 5 (D.D.C. 2008) (also noting that "the case law is split as to whether injuries that are non-physical in nature are covered under the [FECA] such as the claim of intentional infliction of emotional distress" and is thus a decision reserved for the Secretary); *Jones v. United States*, 318 F. Supp. 3d 15, 20–21 (D.D.C. 2018) (collecting cases and noting that "the D.C. Circuit has not yet determined whether FECA covers intentional infliction of emotional distress[,]" and that other Circuits and courts in this District are split, therefore, "[u]nfortunately for [the plaintiff], under Circuit precedent, the uncertainty surrounding whether his IIED claim falls within the scope of

12

FECA works to his disadvantage . . . [because the] lack of binding authority" only contributes to the "substantial question" regarding coverage, and that question can only be answered by the Secretary) (citations and internal quotation marks omitted); *Davis v. United States*, 973 F. Supp. 2d 23, 28 n.4 (D.D.C. 2014) (finding same and also noting that 5 U.S.C. § 8116(c) "does not seem to distinguish IIED from other intentional torts on its face[.]") (relying on *Kalil*, 407 F. Supp. 2d at 100).

Fourth, Plaintiff is concerned that the Secretary based its coverage determination solely on the instant Complaint and Opposition, instead of a full administrative record, particularly due to Schultz's caveat that "actual adjudication of the claim could present additional facts that could impact the coverage decision." *See* Pl. Opp'n at 7, 15–16 (quoting Coverage Memo at 3). However, because Plaintiff declined to pursue his administrative remedies with the OWCP, Defendant has no other option but to review the information available in this lawsuit. In such situations, it is routine for the Secretary to review a plaintiff's submissions in a federal lawsuit in determining the likelihood of FECA coverage. *See, e.g., Zellars*, 2006 WL 1050673, at *1–*3 (dismissing case pursuant to Rule 12(b)(1) where the plaintiff "failed to secure a decision from the Secretary of Labor," and the Secretary then determined that FECA coverage likely extended to the plaintiff's claims based on its analysis of the court submissions); *Jones*, 318 F. Supp. 3d at 19–21 (same); *Kalil*, 407 F. Supp. at 99–100 (same); *Manning*, 2019 WL 281278, at *19 (same); *Zellars*, 578 F. Supp. 2d at 5–6 (explaining that so much an inference that a plaintiff is alleging injuries resulting in a disability possibly covered by the FECA is enough to warrant dismissal for want of subject matter jurisdiction); *see also* 5 U.S.C. § 8128(a) (empowering the Secretary to, *at any time*, review a claim for or against a payment of compensation to an employee) (emphasis added).

Finally, Plaintiff alternatively requests that the Court stay these proceedings while the Secretary of Labor assesses his FECA claim. *See* Pl. Opp'n at 8. In support, he cites, *see id.* at 9, to *Bourke v. United States*, No. 20-4427, 2022 WL 17668492, at *4–*5 (N.D. Ill. Dec. 14, 2022), where the trial court found that it was without enough information to determine if the plaintiff's FTCA claim fell within an exception to a state statute of repose. In *dicta*, that court noted that it "retained subject-matter jurisdiction over" the plaintiff's FTCA claim while his FECA claim—which had, notably, already been waged with the Secretary of Labor before filing suit—"was pending before the Secretary." *See id.* at *1, *3.

As highlighted by Defendant, *Bourke's* "reasoning is neither controlling, nor the bright line practice in this district." Def. Reply at 7. While "at least some out-of-circuit authority suggests that a stay of proceedings is appropriate to give the Secretary an opportunity to evaluate the claims[,]" in contrast, "precedent in this jurisdiction . . . favors dismissal when FECA does, or may, apply." *Manning*, 2019 WL 281278, at *19 (collecting cases and dismissing FTCA—including emotional distress—claims without prejudice where the plaintiff failed to "pursue any as-yet unpursued administrative remedies [under the FECA]."); *see also, e.g., Daniels-Lumley*, 306 F.2d at 770–72 (affirming dismissal without prejudice where the plaintiff had not taken opportunities to pursue administrative remedy under FECA with the Secretary of Labor); *Jones*, 318 F. Supp. 3d at 19–21 (dismissing FTCA (IIED) claims pursuant to Rule 12(b)(1) due to the FECA's exclusive remedy provision, where plaintiff had failed to present a FECA claim to the Secretary of Labor); *Kalil*, 407 F. Supp. 2d at 100 (same, but without prejudice); *Davis*, 973 F. Supp. at 28 (dismissing FTCA claims pursuant to Rule 12(b)(1) due to FECA's exclusive remedy provision, where plaintiff had failed to present a FECA claim to the Secretary of Labor); *Zellars*, 2006 WL 1050673, at *2–*3 (same).

The Court acknowledges that, in previous select circumstances, courts in this District—including this Court—have elected to stay an FTCA case while the plaintiff's FECA claim was administratively resolved, but those cases are distinguishable to the instant matter because they often presented timeliness concerns arising from the FTCA's statute of limitations, which, at that time, was interpreted as jurisdictional. *See, e.g., Sullivan*, 2006 WL 8451987, at *5 (finding that the plaintiff's FTCA claims should be stayed while he administratively exhausted his FECA claim to safeguard against the running of the then-jurisdictional two-year statute of limitations set forth in 28 U.S.C. § 2401(b)); *see also Spannaus v. Dep't of Justice*, 824 F.2d 52, 55 (D.C. Cir. 1987) (previously holding that § 2401 was jurisdictional and not subject to equitable tolling). But after those cases were decided, both the Supreme Court and the D.C. Circuit concluded that the FTCA's statute of limitations is, to the contrary, *non-jurisdictional*, *see U.S. v. Kwai Fun Wong*, 575 U.S. 402, 407 (2015); *Jackson v. Modly*, 949 F.3d 763, 778 (D.C. Cir. 2020) (overruling *Spannaus* and its progeny and formally adopting the holding in *Kwai*), *cert. denied sub nom.*, 141 S.Ct. 875 (2020). It is also notable that, here, Plaintiff has already timely administratively exhausted his FTCA with USAID's Deputy General Counsel, *see* Compl. at 9; Def. Mem. at 3 n.1; Def. Mem. Ex. 2, satisfying his presentment requirement, *see* 28 U.S.C. § 2401(b); *see also Manning*, 2019 WL 281278, at *5 (finding that, in dismissing the plaintiff's FTCA claims due to the FECA's exclusive remedy provision, the court "need not reach the issue of tolling the FTCA's statute of limitations, an issue which is now regarded as non-jurisdictional under *Kwai Fun Wong*.") (citing *Kwai Fun Wong*, 575 U.S. at 419–20).

Similarly, Plaintiff also relies, *see* Pl. Opp'n at 9–12, on *Mathirampuzha*, 548 F. 3d at 84, in which the Second Circuit encouraged courts in its jurisdiction to consider staying an FTCA matter until the Secretary of Labor determined the scope of FECA coverage, particularly where

15

the statute's applicability to the claim is uncertain, *see id.* at 84–85.  However, once again, this recommendation was derived from concern over the then-jurisdictional statute of limitations, particularly because that plaintiff had yet to present any administrative FTCA claim to the agency, and because the Secretary had already determined that his administrative FECA claim was untimely and unlikely to be covered.  *See id.* at 84–85.  But, as discussed above, the applicable statute of limitations is no longer jurisdictional; indeed, § 2401(b) exists "to encourage the prompt presentation of claims" against the federal government; it does not exist as an avenue for the government to engage in procedural legal maneuvering. *See U.S. v. Kubrick*, 444 U.S. 111, 117 (1979). Here, Plaintiff has unequivocally provided Defendant with prompt notice, and he has diligently pursued his legal rights, alleviating concern over the statute of limitations.  So long as Plaintiff continues to act with such diligence, given the particulars here, a future statute of limitations defense as to his FTCA claim would be in bad faith.

Furthermore, the Secretary has assured Plaintiff that, even after reviewing all his noted concerns, the FECA will likely extend to his claims.  *See* Schultz Decl. I ¶¶ 1–6; Schultz Decl. II ¶¶ 1–7; Coverage Memo at 1–3; *see also Scott*, 2006 WL 2787832, at *4 (finding that when the Secretary confirms coverage under the FECA, it is then "the employee's only route to compensation for that injury. Any other interpretation of the statute would render the exclusivity provision meaningless.").  Considering all of the extant circumstances, Plaintiff's request for a stay is denied.  *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court *must dismiss* the action.") (emphasis added).

After review of all of the arguments presented, and the full record in this case, the Court finds that Plaintiff's failure to present his claim to the Secretary of Labor, or his doubts about doing same, does not allow him to sidestep the FECA's exclusive-remedy provision and alternatively

pursue his claims under the FTCA in this Court. Plaintiff may later attempt refile his FTCA claims if he "can prove that the Secretary of Labor has decided that their compensation claims are outside the scope of FECA." *See Manning*, 2019 WL 281278, at *14.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss, ECF No. 14, is granted, and this case is dismissed without prejudice pursuant to Federal Rule 12(b)(1). An Order consistent with this Memorandum Opinion will be issued contemporaneously.

Date:  August 4, 2023

\_\_\_\_/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge